UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-2(c)**

Stern Lavinthal & Frankenberg LLC
105 Eisenhower Parkway - Suite 302
Roseland, NJ  07068
Telephone Number (973) 797-1100
Facsimile Number (973) 228-2679
Email: mcozzini@sternlav.com
Attorneys for Secured Creditor,
THE BANK OF NEW YORK MELLON FKA
THE BANK OF NEW YORK, AS TRUSTEE
FOR THE CERTIFICATEHOLDERS OF THE
CWABS INC., ASSET-BACKED
CERTIFICATES, SERIES 2006-24
By: Maria Cozzini, Esq.

| | |
|---|---|
| In Re:<br><br>   Jimmie R. Robinson<br><br>   Geraldine Robinson<br><br>   Debtor(s) | Case No.: 18-28153-JNP<br>Chapter:   13<br>Hearing Date:<br>Judge:   Jerrold N.  Poslusny, Jr. |

## NOTICE OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY
## ON BEHALF OF SECURED CREDITOR

**THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWABS INC., ASSET-BACKED CERTIFICATES, SERIES 2006-24,** has filed papers with the Court to obtain relief from the automatic stay.  **Your rights may be affected.**  You should read these papers carefully and discuss them with your attorney, if you have one on this case.  (If you do not have an attorney, you may wish to consult one.)

If you do not want the court to enter an order for relief from the automatic stay, or if you want the court to consider your views on the motion, then within seven (7) days prior to the scheduled hearing, you or your attorney must:

File with the Court a written response or answer explaining your position, and mail a copy to:

Stern Lavinthal & Frankenberg LLC
105 Eisenhower Parkway - Suite 302
Roseland, NJ  07068

If you mail your response to the Court for filing, you must mail it early enough so the Court will receive it by the date stated above.

**Hearing Scheduled To Be Held Before:**

Honorable: Jerrold N.  Poslusny, Jr.
Date:  1/25/2022
Time: 11:00 a.m.
Place: 400 Cooper Street, 4th Floor, Camden, NJ  08101

Pursuant to D.N.J. LBR 4001-1 et seq the **movant waives oral argument** and the court may not hold a hearing unless opposition papers are timely filed.  Pursuant to D.N.J. LBR 9013-1(d) et seq., if you wish to contest the within motion, you must file with the Office of the Clerk of the Bankruptcy Court, responding papers stating with particularity the basis of your opposition to the within Motion.  A copy of the proposed Order which is sought is enclosed with this Motion.

If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought in the motion and may enter an order granting relief from the automatic stay.

**Statement of Non-Necessity of Brief**: The movant certifies pursuant to D.N.J. LBR 9013-2 that the within motion involves common questions of law and fact and does not involve complex or novel issues such as to require the submission of a legal brief.

DATED:                                 Stern Lavinthal & Frankenberg LLC

By:     /s/*Maria Cozzini, Esq.*
            Maria Cozzini, Esq.

Padgett Law Group

By:     */s/ Johua I. Goldman*
            Joshua I. Goldman
            NJ Bar No.:  005852007
            6267 Old Water Oak Road, Ste. 203
            Tallahassee, FL 32312
            *As Co-Counsel*

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-2(c)**

Stern Lavinthal & Frankenberg LLC
105 Eisenhower Parkway - Suite 302
Roseland, NJ 07068
Telephone Number (973) 797-1100
Facsimile Number (973) 228-2679
Email: mcozzini@sternlav.com
Attorneys for Secured Creditor,
THE BANK OF NEW YORK MELLON FKA
THE BANK OF NEW YORK, AS TRUSTEE
FOR THE CERTIFICATEHOLDERS OF THE
CWABS INC., ASSET-BACKED
CERTIFICATES, SERIES 2006-24
By: Maria Cozzini, Esq.

| In Re: | Case No.: 18-28153-JNP |
|---|---|
| Jimmie R. Robinson | Chapter:  13 |
| | Hearing Date: |
| Geraldine Robinson | Judge:  Jerrold N. Poslusny, Jr. |
| Debtor(s) | |

## CERTIFICATION OF CREDITOR REGARDING POST PETITION PAYMENT HISTORY

### NOTE AND MORTGAGE DATED 11/17/2006

_Amy Brown_ , of full age, employed as _Manager_ by

New Rez LLC dba Shellpoint Mortgage Servicing as servicer for THE BANK OF NEW YORK

MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE

CERTIFICATEHOLDERS OF THE CWABS INC., ASSET-BACKED CERTIFICATES,

SERIES 2006-24, hereby certifies the following:

Recorded on 11/27/2006, in Cumberland County, in Book 4013 at Page 9673

Property Address: 406 West Laurel Street, Vineland, NJ 08360

Mortgage Holder: THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWABS INC., ASSET-BACKED CERTIFICATES, SERIES 2006-24

\*\*New Rez LLC dba Shellpoint Mortgage Servicing services the underlying mortgage loan and note for the property referenced in this motion for THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWABS INC., ASSET-BACKED CERTIFICATES, SERIES 2006-24. In the event the automatic stay in this case is modified, this case dismisses, and/or the Debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Movant. Movant, directly or through an agent, has possession of the Note. The Note is endorsed in blank. Movant is the beneficiary or the assignee of the Deed of Trust\*\*

Mortgagor(s)/ Debtor(s): Jimmie R. Robinson and Geraldine Robinson

POST-PETITION PAYMENTS: Petition filed on 09/11/2018 – FB expired 04/30/2021

| Amount Due | Date Payment Was Due | How Payment Was Applied (Mo./Yr.) | Amount Received | Date Payment Received | Check or Money Order Number |
|---|---|---|---|---|---|
| $960.00 | 10/01/2018 | 10/2018 | $1,044.09 ($83.49 to suspense) | 10/23/2018 | |
| $960.00 | 11/01/2018 | 11/2018 | $960.00 | 11/30/2018 | |
| $960.00 | 12/01/2018 | 12/2018 | $960.00 | 12/28/2018 | |
| $960.00 | 01/01/2019 | 01/2019 | $960.00 | 01/30/2019 | |
| $960.00 | 02/01/2019 | 02/2019 | $960.00 | 02/26/2019 | |
| $960.00 | 03/01/2019 | 03/2019 | $960.00 | 04/01/2019 | |
| $960.00 | 04/01/2019 | 04/2019 | $960.00 | 04/30/2019 | |
| $960.00 | 05/01/2019 | 05/2019 | $960.00 | 05/31/2019 | |
| $960.00 | 06/01/2019 | 06/2019 | $960.00 | 06/28/2019 | |
| $960.00 | 07/01/2019 | 07/2019 | $960.00 | 07/29/2019 | |
| $960.00 | 08/01/2019 | 08/2019 | $960.00 | 08/30/2019 | |
| $960.00 | 09/01/2019 | 09/2019 | $964.74 ($4.14 to suspense) | 09/30/2019 | |
| $964.74 | 10/01/2019 | 10/2019 | $858.87 ($105.87 from suspense) | 10/31/2019 | |
| $964.74 | 11/01/2019 | 11/2019 | $858.87 ($105.87 from suspense) | 11/29/2019 | |
| $964.74 | 12/01/2019 | 12/2019 | $858.87 ($105.87 from suspense) | 12/28/2019 | |
| $964.74 | 01/01/2020 | 01/2020 | $1,164.74 ($200.00 to suspense) | 03/02/2020 | |
| $964.74 | 02/01/2020 | 02/2020 | $1,064.74 ($100.00 to suspense) | 04/06/2020 | |
| $964.74 | 03/01/2020 | 03/2020 | $1,000.00 | 04/30/2020 | |

| | | | ($35.26 to suspense) | | |
|---|---|---|---|---|---|
| $964.74 | 04/01/2020 | 04/2020 | $1,015.30 ($50.56 to suspense) | 06/01/2020 | |
| $964.74 | 05/01/2020 | 05/2020 | $1,000.00 ($35.26 to suspense) | 07/13/2020 | |
| $964.74 | 06/01/2020 | 06/2020 | $1,000.00 ($35.26 to suspense) | 08/10/2020 | |
| $964.74 | 07/01/2020 | 07/2020 | $1,000.00 ($35.26 to suspense) | 09/21/2020 | |
| $964.74 | 08/01/2020 | 08/2020 | $1,000.00 ($35.26 to suspense) | 10/30/2020 | |
| $964.74 | 09/01/2020 | 09/2020 | $990.00 ($25.26 from suspense) | 11/30/2020 | |
| $976.84 | 10/01/2020 | 10/2020 | $765.00 ($211.84 from suspense) | 01/05/2021 | |
| $976.84 | 11/01/2020 | 11/2020 | $1,000.00 ($23.16 to suspense) | 01/26/2021 | |
| $976.84 | 12/01/2020 | 12/2020 | $1,000.00 ($23.16 to suspense) | 02/22/2021 | |
| $976.84 | 01/01/2021 | 01/2021 | $1,000.00 ($23.16 to suspense) | 03/05/2021 | |
| $976.84 | 02/01/2021 | 02/2021 | $1,000.00 ($23.16 to suspense) | 04/12/2021 | |
| $976.84 | 03/01/2021 | 03/01/2021 | $1,000.00 ($23.16 to suspense) | 05/28/2021 | |
| $976.84 | 04/01/2021 | 04/01/2021 | $1,000.00 ($23.16 to suspense) | 06/30/2021 | |
| $976.84 | 05/01/2021 | 05/01/2021 | $1,000.00 ($23.16 to suspense) | 08/05/2021 | |
| $976.84 | 06/01/2021 | 06/01/2021 | $1,000.00 ($23.16 to suspense) | 08/30/2021 | |
| $976.84 | 07/01/2021 | 07/01/2021 | $1,000.00 ($23.16 to suspense) | 10/08/2021 | |
| $976.84 | 08/01/2021 | 08/01/2021 | $1,000.00 ($23.16 to suspense) | 11/03/2021 | |
| $976.84 | 09/01/2021 | 09/01/2021 | $1,000.00 ($23.16 to suspense) | 12/01/2021 | |

| $975.41 | 10/01/2021 | ------------- | $0.00 | ------------- | |
| $975.41 | 11/01/2021 | ------------- | $0.00 | ------------- | |
| $975.41 | 12/01/2021 | ------------- | $0.00 | ------------- | |

**FB expired 04/30/21**

Monthly payments past due: 3 mos. x $975.41

Monthly payments: (10/01/2021 – 12/01/2021) 3 mos. x $975.41 - $365.06 suspense balance = $2,561.17 as of December 10, 2021

The principal balance owed is in the amount of $132,417.02 as of December 10, 2021

The total amount owed to pay off the account is in the amount of $135,485.43 as of December 10, 2021

Each current monthly payment is comprised of:

| Principal/Interest | $677.07 | |
| Escrow | $298.34 | |
| R.E. Taxes | $ | |
| Insurance | $ | |
| Late Charge | $ | |
| Other | $ | (Specify _____ ) |
| Total | $975.41 | |

If the monthly payment has changed during the pendency of the case, please explain (attach separate sheet(s) if necessary): **NOPC Effective 10/01/2019, 10/01/2020 & 10/01/2021**

I certify under penalty of perjury that the foregoing is true and correct.

12-23-2021
Date

Signature

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-2(c)**

Stern Lavinthal & Frankenberg LLC
105 Eisenhower Parkway - Suite 302
Roseland, NJ  07068
Telephone Number (973) 797-1100
Facsimile Number (973) 228-2679
Email: mcozzini@sternlav.com
Attorneys for Secured Creditor,
THE BANK OF NEW YORK MELLON FKA
THE BANK OF NEW YORK, AS TRUSTEE
FOR THE CERTIFICATEHOLDERS OF THE
CWABS INC., ASSET-BACKED
CERTIFICATES, SERIES 2006-24
By: Maria Cozzini, Esq.

In Re:

    Jimmie R. Robinson

    Geraldine Robinson

       Debtor(s)

Case No.: 18-28153-JNP
Chapter:   13
Hearing Date:
Judge:   Jerrold N.  Poslusny, Jr.

**ORDER VACATING AUTOMATIC STAY**

The relief set forth on the following pages, numbered two (2), is hereby **ORDERED**.

(Page 2)
Debtor: Jimmie R. Robinson  and Geraldine Robinson
Case No.:18-28153-JNP
Caption of Order: **Order Vacating Automatic Stay**

Upon the Motion of THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWABS INC., ASSET-BACKED CERTIFICATES, SERIES 2006-24, on behalf of itself and its successors and/or assigns (hereinafter collectively "Secured Creditor" and/or Movant), under Bankruptcy Code Section 362(d) for relief from the automatic stay as to certain real property as hereinafter set forth, and for cause shown,

ORDERED as follows:

1.     The automatic stay of Bankruptcy Code Section 362(a) is vacated to permit the movant its successors and/or assigns to institute or resume and prosecute to conclusion one or more action(s) in the court(s) of appropriate jurisdiction to foreclose mortgage(s) held by the movant upon the following:

-     Land and premises commonly known as **406 West Laurel Street, Vineland, NJ 08360**

2.     The movant may join the debtor and any trustee appointed in this case as defendants in its foreclosure action(s) irrespective of any conversion to any other chapter of the Bankruptcy Code.

The movant shall serve this Order on the debtor, any trustee and other party who entered an appearance on the motion.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-2(c)**

Stern Lavinthal & Frankenberg LLC
105 Eisenhower Parkway - Suite 302
Roseland, NJ  07068
Telephone Number (973) 797-1100
Telecopier Number (973) 228-2679
Email: mcozzini@sternlav.com
Attorneys for Secured Creditor,
THE BANK OF NEW YORK MELLON FKA
THE BANK OF NEW YORK, AS TRUSTEE
FOR THE CERTIFICATEHOLDERS OF THE
CWABS INC., ASSET-BACKED
CERTIFICATES, SERIES 2006-24
By: Maria Cozzini, Esq.

| | |
|---|---|
| In Re:<br><br>Jimmie R. Robinson<br><br>Geraldine Robinson<br><br>Debtor(s) | Case No.: 18-28153-JNP<br>Chapter:   13<br>Hearing Date:<br>Judge: Jerrold N.  Poslusny, Jr. |

## CERTIFICATION OF SERVICE

1. I, Angelica D.Reyes,

   ☐ represent the _____ in the above-captioned matter.
   ☑ am the secretary/paralegal for   Padgett Law Group, as Co-Counsel , who represents the Creditor in above captioned matter.
   ☐ am the _____ in the above case and am representing myself.

2. On   12/23/2021   , I sent a copy of the following pleadings and/or documents to the

   parties listed in the chart below: *Motion for Relief from Stay*

I hereby certify under penalty of perjury that the above documents were sent using the mode of service indicated.

Dated:   12/23/2021                    /s/ Angelica D. Reyes
                                       Angelica D. Reyes

202101228

| Name and Address of Party Served | Relationship of Party to the Case | Mode of Service |
|---|---|---|
| Jimmie R. Robinson<br>691 Fava Dr.<br>Vineland, NJ 08360<br><br>Geraldine Robinson<br>691 Fava Dr.<br>Vineland, NJ 08360 | Debtor | ☐ Hand-delivered<br>☒ Regular mail<br>☐ Certified mail/RR<br>☐ E-mail<br>☐ Notice of Electronic Filing (NEF)<br>☐ Other _____<br>(as authorized by the court *) |
| Seymour Wasserstrum<br>Law Offices of Seymour Wasserstrum<br>205 West Landis Avenue<br>Vineland, NJ 08360 | Debtor's Counsel | ☐ Hand-delivered<br>☒ Regular mail<br>☐ Certified mail/RR<br>☐ E-mail<br>☒ Notice of Electronic Filing (NEF)<br>☐ Other _____<br>(as authorized by the court *) |
| Isabel C. Balboa<br>Chapter 13 Standing Trustee<br>Cherry Tree Corporate Center<br>535 Route 38 - Suite 580<br>Cherry Hill, NJ 08002 | Trustee | ☐ Hand-delivered<br>☒ Regular mail<br>☐ Certified mail/RR<br>☐ E-mail<br>☒ Notice of Electronic Filing (NEF)<br>☐ Other _____<br>(as authorized by the court *) |
|  |  | ☐ Hand-delivered<br>☐ Regular mail<br>☐ Certified mail/RR<br>☐ E-mail<br>☐ Notice of Electronic Filing (NEF)<br>☐ Other _____<br>(as authorized by the court *) |

*May account for service by fax or other means as authorized by the court through the issuance of an Order Shortening Time.





JOE HORNG

# NOTE

NOVEMBER 17, 2006          STONE HARBOR          NEW JERSEY
[Date]                     [City]                [State]

406 WEST LAUREL ST, VINELAND, NJ 08360-2719
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 131,750.00          (this amount is called "Principal"),
plus interest, to the order of the Lender. The Lender is
AMERICA'S WHOLESALE LENDER
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is
entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly
rate of   8.200 %.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B)
of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments
I will pay Principal and interest by making a payment every month.
I will make my monthly payment on the  FIRST          day of each month beginning on
JANUARY 01, 2007     . I will make these payments every month until I have paid all of the Principal and interest and
any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled
due date and will be applied to interest before Principal. If, on  DECEMBER 01, 2036     , I still owe amounts under this
Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at
P.O. Box 660694, Dallas, TX 75266-0694
or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments
My monthly payment will be in the amount of U.S. $ 985.17

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A prepayment of all of the unpaid
principal is known as a "Full Prepayment." A prepayment of only part of the unpaid principal is known as a "Partial
Prepayment."

I may make a Full or Partial Prepayment without paying any penalty. If I make a Partial Prepayment equal to one
or more of my monthly payments, my due date may be advanced no more than one month. If I make any other Partial
Prepayment, I must still make each later payment as it becomes due and in the same amount. I may make a Full
Prepayment at any time.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other
loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge
shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from
me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the
Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated
as a Partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments
If the Note Holder has not received the full amount of any monthly payment by the end of  FIFTEEN          calendar
days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   5.000 % of my
overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

● BC-NEW JERSEY FIXED RATE NOTE
2D000-NJ   (12/05)(d)                          Page 1 of 6

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. APPLICABLE LAW**

I agree that this agreement is to be governed by federal law and, to the extent not preempted by federal law, by the laws of the state where the real property is located. If a law, which applies to this loan and sets maximum loan charges is finally interpreted so that the interest and other charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such interest or other charge shall be reduced by the amount necessary to reduce the interest or other charge to the permitted limit; and (b) any sums already collected from me which exceed permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a Partial Prepayment, but in no event will a prepayment charge be assessed if the Note Holder chooses to reduce my Principal balance by applying such excess amounts.

**11. SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____        _____
JIMMIE R. ROBINSON              -Borrower                              -Borrower

_____        _____
                                -Borrower                              -Borrower

*(Sign Original Only)*

PAY TO THE ORDER OF

WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC., A NEW YORK CORPORATION
DOING BUSINESS AS AMERICA'S WHOLESALE LENDER

By: _____
 MICHELE SJOLANDER
EXECUTIVE VICE PRESIDENT

# RECORDING INFORMATION SHEET

**CUMBERLAND COUNTY CLERK'S OFFICE**
**60 WEST BROAD STREET**
**BRIDGETON NJ 08302**

| INSTRUMENT NUMBER:<br>**260598** | DOCUMENT TYPE :<br>**MORTGAGE** |
|---|---|

**Official Use Only**

GLORIA NOTO, COUNTY CLERK
CUMBERLAND COUNTY, NJ

INSTRUMENT NUMBER
260598
RECORDED ON
November 27, 2006  11:59 am
BOOK:4013  PAGE:9673

PMR

**Return Address** *(for recorded documents)*

SURETY TITLE CORP

359  96TH ST UNIT 204

STONE HARBOR NJ 08247

| | |
|---|---|
| **No. Of Pages** *(excluding Summary Sheet)* | 14 |
| Recording Fee *(excluding Transfer Tax)* | $160.00 |
| **Realty Transfer Tax** | $0.00 |
| **Amount Charged**     (Check # 261980) | $160.00 |
| **Parcel Information** | Block<br>Lot |
| **First Party Name** | JIMMIE R  ROBINSON |
| **Second Party Name** | AMERICA'S WHOLESALE LENDER |

MAIL COPY _____
NO COPY _____
ENVELOPE _____

ADDITIONAL STAMPINGS _____

**Additional Information (Official Use Only)**

******************************** *DO NOT REMOVE THIS PAGE.*********************************
*COVER SHEET (DOCUMENT SUMMARY FORM) IS PART OF CUMBERLAND COUNTY FILING RECORD*
******************** *RETAIN THIS PAGE FOR FUTURE REFERENCE.* ********************

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
BRUCE HORNG



Record and return to:
Surety Title Corporation

——————————————— [Space Above This ]

ROBINSON
[Escrow/Closing #]

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) **"Security Instrument"** means this document, which is dated NOVEMBER 17, 2006   , together with all Riders to this document.
(B) **"Borrower"** is
JIMMIE R ROBINSON, AND GERALDINE ROBINSON, AS JOINT TENANTS

Borrower is the mortgagor under this Security Instrument.
(C) **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D) **"Lender"** is
AMERICA'S WHOLESALE LENDER
Lender is a CORPORATION
organized and existing under the laws of NEW YORK
Lender's address is
4500 Park Granada MSN# SVB-314, Calabasas, CA 91302-1613
(E) **"Note"** means the promissory note signed by Borrower and dated NOVEMBER 17, 2006   . The Note states that Borrower owes Lender
ONE HUNDRED THIRTY ONE THOUSAND SEVEN HUNDRED FIFTY and 00/100

Dollars (U.S. $ 131,750.00      ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than DECEMBER 01, 2036   .

NEW JERSEY-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
-6A(NJ) (0512)    CHL (07/06)(d)                    Page 1 of 16                    Form 3031-1/01
CONV/VA

(F) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(G) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| [ ] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [X] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] |
| | | 0 |

(I) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) **"Escrow Items"** means those items that are described in Section 3.

(M) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For these purposes, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in the

COUNTY of CUMBERLAND :

[Type of Recording Jurisdiction]    [Name of Recording Jurisdiction]

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number: which currently has the address of

406 WEST LAUREL ST, VINELAND

[Street/City]

New Jersey 08360-2719 ("Property Address"):

[Zip Code]

-6A(NJ) (0512)    CHL (07/06)    Page 2 of 10    Form 3031 1/01

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future. If Lender accepts such payments, it shall apply such payments at the time such payments are accepted. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment

within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges

that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for

enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and

agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest

in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property; (e) the Borrower's right to**

reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure; and (f) any other disclosure required under the Fair Foreclosure Act, codified at Sections 2A:50-53 et seq. of the New Jersey Statutes, or other Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. No Claim of Credit for Taxes. Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____ (Seal)
JIMMIE R. ROBINSON                -Borrower

_____ (Seal)
GERALDINE ROBINSON                -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

STATE OF NEW JERSEY,    CAPE MAY    County ss:

On this ___17___ day of ___NOV. 2006___ , before me, the subscriber, personally appeared ___JIMMIE R. ROBINSON___
___GERALDINE ROBINSON___

_____ who, I am satisfied, is/are the person(s) named in and who executed the within instrument, and thereupon acknowledged that he/she/they signed, sealed and delivered the same as his/her/their act and deed, for the purposes therein expressed.

Surety Title Corporation
Price Waterworks, Unit 204          Notary Public
359 96th Street, P.O. Box 128
Stone Harbor, NJ 08247                AUDREY A. ORMROD
Tl. (609) 368-4411                    NOTARY PUBLIC OF NEW JERSEY
                                      Commission Expires 7/14/2011

-6A(NJ) (0512)     CHL (07/06)          Page 10 of 10              Form 3031 1/01



**TITLE INSURANCE COMMITMENT**

### SCHEDULE C
### LEGAL DESCRIPTION

ALL that certain land and premises situate in the City of Vineland, County of Cumberland and the State of New Jersey, bounded and described as follows:

BEING the same land and premises more particularly described in Deed Book 1294, Page 115.

BEING known as Lot 13, Block 286 as shown on the City of Vineland tax map.

COMMONLY known as 406 West Laurel Street.

Schedule C Consists of 1 page(s)

# 1-4 FAMILY RIDER
### (Assignment of Rents)

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

PARCEL ID #:

Prepared By:
BRUCE HORNG

ROBINSON                          █████████████████
[Escrow/Closing #]                    [Doc ID #]

THIS 1-4 FAMILY RIDER is made this SEVENTEENTH      day of NOVEMBER, 2006 ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure
Borrower's Note to
AMERICA'S WHOLESALE LENDER

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:
406 WEST LAUREL ST
VINELAND, NJ 08360-2719
[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

MULTISTATE 1-4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
-57R (0401).01    CHL (06/04)(d)      Page 1 of 3          Initials:
VMP Mortgage Solutions, Inc. (800)521-7291              **Form 3170 1/01**

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in the Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorneys' fees, receiver's fees, premiums on receiver's bonds, repair and

maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

_____ (Seal)
JIMMIE R. ROBINSON                                    - Borrower

_____ (Seal)
GERALDINE ROBINSON                                   - Borrower

_____ (Seal)
                                                      - Borrower

_____ (Seal)
                                                      - Borrower

-57R (0401).01 CHL (06/04)          Page 3 of 3          Form 3170 1/01

# RECORDING INFORMATION SHEET

**CUMBERLAND COUNTY CLERK'S OFFICE**
60 WEST BROAD STREET
BRIDGETON NJ 08302

| INSTRUMENT NUMBER: | DOCUMENT TYPE : |
|---|---|
| **422124** | **ASSIGN MTG** |

**Official Use Only**

GLORIA NOTO, COUNTY CLERK
CUMBERLAND COUNTY, NJ

INSTRUMENT NUMBER
422124
RECORDED ON
October 15, 2012   03:02 pm
BOOK:4097 PAGE:3352

BDF

**Return Address** *(for recorded documents)*
BANK OF AMERICA
1800 TAPO CANYON ROAD
SIMI VALLEY CA 93063

| No. Of Pages *(excluding Summary Sheet)* | | 1 |
|---|---|---|
| Recording Fee *(excluding Transfer Tax)* | | $40.00 |
| **Realty Transfer Tax** | | $0.00 |
| **Amount Charged**            (ACH) | | $40.00 |

| Parcel Information | Block | |
|---|---|---|
| | Lot | |
| **First Party Name** | MERS | |
| **Second Party Name** | BANK OF NEW YORK MELLON | |

MAIL COPY  _____
NO COPY  _____
ENVELOPE  _____

ADDITIONAL STAMPINGS  _____

**Additional Information (Official Use Only)**

*****************************DO  NOT  REMOVE  THIS  PAGE.*****************************
*COVER SHEET (DOCUMENT SUMMARY FORM) IS PART OF CUMBERLAND COUNTY FILING RECORD*
*********************RETAIN THIS PAGE FOR FUTURE REFERENCE.*********************

## Cumberland County Document Summary Sheet

| | Transaction Identification Number | 1834442 | 1029366 |
|---|---|---|---|

CUMBERLAND CLERK'S OFFICE

60 W. BROAD ST
BRIDGETON NJ 08302

**Return Address**   *(for recorded documents)*
BANK OF AMERICA
1800 TAPO CANYON ROAD
SIMI VALLEY, CA 93063

| Official Use Only | | |
|---|---|---|
| Submission Date *(mm/dd/yyyy)* | | 10/11/2012 |
| No. of Pages *(excluding Summary Sheet)* | | 1 |
| Recording Fee *(excluding transfer tax)* | | $40.00 |
| Realty Transfer Tax | | $0.00 |
| Total Amount | | $40.00 |
| Document Type | ASSIGNMENT OF MORTGAGE | |

**Electronic Recordation Level**
    L2 - Level 2 (With Images)

**Municipal Codes**
    VINELAND                                    03

**Bar Code(s)**

**Additional Information (Official Use Only)**

*\* DO NOT REMOVE THIS PAGE.*
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF CUMBERLAND COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

### Cumberland County Document Summary Sheet

| | | |
|---|---|---|
| **Type** | ASSIGNMENT OF MORTGAGE | |
| **Consideration** | | |
| **Submitted By** | BANK OF AMERICA (INGEO SYSTEMS INC) | |
| **Document Date** | 10/10/2012 | |
| **Reference Info** | | |

| Book ID | Book | Beginning Page | Instrument No. | Recorded/File Date |
|---|---|---|---|---|
| MB | 4013 | 9673 | 260598 | |

**ASSIGNMENT OF MORTGAGE**

| MORTGAGOR | Name | Address |
|---|---|---|
| | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC | |

| ASSIGNEE | Name | Address |
|---|---|---|
| | BANK OF NEW YORK MELLON BANK OF NEW YORK | |

| Parcel Info | | | | | |
|---|---|---|---|---|---|
| Property Type | Tax Dist. | Block | Lot | Qualifier | Municipality |
| | | | | | |

*\* DO NOT REMOVE THIS PAGE.*
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF CUMBERLAND COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

This space for Recorder's use

Recording Requested By;
**Bank of America**
Prepared By:
**Danilo Cuenca**
**800-444-4302**
**1800 Tapo Canyon Road**
**Simi Valley, CA 93063**

When recorded mail to:
**CoreLogic**
**Mail Stop: ASGN**
**1 CoreLogic Drive**
**Westlake, TX 76262-9823**

Property Address:
**406 W Laurel St**
**Vineland, NJ 08360-2719**
Property Location:
**City of VINELAND**

## ASSIGNMENT OF MORTGAGE

For Value Received, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS NOMINEE FOR AMERICA'S WHOLESALE LENDER** its successors and assigns (herein "Assignor") whose address is 1901 E Voorhees Street, Suite C, Danville, IL 61834 hereby assign and transfer to **THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWABS INC., ASSET-BACKED CERTIFICATES, SERIES 2006-24** its successors and assigns whose address is C/O BAC, M/C: CA6-914-01-43, 1800 Tapo Canyon Road, Simi Valley, CA 93063 all its right, title, and interest to a certain Mortgage described below.

Original Lender:                         **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS NOMINEE FOR AMERICA'S WHOLESALE LENDER**

Borrower(s):                             **JIMMIE R ROBINSON, AND GERALDINE ROBINSON, AS JOINT TENANTS**

Date of Mortgage:        ·    **11/17/2006**

Original Loan Amount:        **$131,750.00**

Recorded in Cumberland County, NJ on: **11/27/2006**, book **4013**, page **9673** and instrument number **260598**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on **OCT 0 9 2012**

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS NOMINEE FOR AMERICA'S WHOLESALE LENDER**

By: _____

**Mercedes Judilla, Assistant Secretary**

State of California
County of Ventura

On **OCT 0 9 2012** before me, _____**Catherine Lincoln**_____, Notary Public, personally appeared **Mercedes Judilla**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public: _____**Catherine Lincoln**_____
My Commission Expires:____**Exp. 12/3/2013**

CATHERINE LINCOLN
Commission # 1872440
Notary Public - California
Los Angeles County
My Comm. Expires Dec 3, 2013
(Seal)

Processed

JAN 21 2014



RECEIVED

JAN 21 2014
*esc*

By _____ NO ✓

823.45

After Recording Return To:
Specialized Loan Servicing LLC
8742 Lucent Blvd, Ste 300, Highlands Ranch, CO 80129
Attn: Loan Resolution Department
Tax/Map/Parcel ID Number:

_____ [Space Above This Line For Recording Data] _____

Investor Loan Number: ▮▮▮▮▮▮▮▮▮▮      Borrower: JIMMIE
R ROBINSON

## HOME AFFORDABLE MODIFICATION AGREEMENT
### (Step Two of Two-Step Documentation Process)

Borrower ("I"):  JIMMIE R ROBINSON whose address is 691 FAVA DR, VINELAND, NJ 08360
("Borrower").
If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document words
signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

Lender or Servicer ("Lender"):  Specialized Loan Servicing LLC a   whose principal place of business and
mailing address is 8742 Lucent Blvd. Ste 300, Highlands Ranch, CO 80129 ("Lender").

Date of first lien mortgage, deed of trust, or security deed ("Mortgage") recorded in Book or Liber See
Original Instrument , of the Records of CUMBERLAND County, NEW JERSEY and Note ("Note"):
November 17, 2006

Loan Number: ▮▮▮▮▮▮▮▮▮

Property Address ("Property"):  406 WEST LAUREL ST , VINELAND, NEW JERSEY 08360

 See Legal description referenced in the original security instrument.

If my representations in Section 1 continue to be true in all material respects, then this Home
Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and
supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage.
The Mortgage and Note together, as they may previously have been amended, are referred to as the
"Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given
to them in Loan Documents.

This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1.      **My Representations.**   I certify, represent to Lender, covenant and agree:

A.   I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

B.   Intentionally Left Blank

C.   There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;

D.   I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification Program ("Program"));

E.   Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

F.   If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

G.   I have made or will make all payments required under a trial period plan.

2.   **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

A.   If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

B.   I understand that the Loan Documents will not be modified unless and until the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3.   **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on January 1, 2014 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a trial period plan, this modification will not take effect. The first modified payment will be due on February 1, 2014.

A.   The new Maturity Date will be: January 1, 2054.

B.   The modified Principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT -Single Family 00MU
- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3157  3/09 (rev. 10/10) SigniaDocs, Inc. 2010

interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to Lender but not previously credited to my Loan. The new Principal balance of my Note will be $135,302.93 (the 'New Principal Balance'). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C.  $40,590.88 of the New Principal Balance shall be deferred (the 'Deferred Principal Balance') and I will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the 'Interest Bearing Principal Balance' and this amount is $94,712.05. Interest at the rate of 4.875% will begin to accrue on the Interest Bearing Principal Balance as of 1/1/2014 and the first new monthly payment on the Interest Bearing Principal Balance will be due on 2/1/2014. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly P&I Payment Amount | Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-40 | 4.875% | 1/1/2014 | $448.88 | $224.77 May adjust periodically | $673.65 May adjust periodically | 2/1/2014 | 480 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

Page 3 of 10 Pages
MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT -Single Family 00MU
- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3157  3/09 (rev. 10/10) SigniaDocs, Inc. 2010

The amount deferred through this modification agreement is $40,590.88 consisting of the amount(s) loaned to Borrower by the current or previous Note Holder and any interest capitalized to date, with a breakdown as follows:

  (a) Unpaid Interest: $0.00
  (b) Corporate Advances: $0.00
  (c) Principal: $40,590.88

Additionally, the amount of items deferred in previous modification(s) on this loan is $0.00, with a breakdown as follows:

  (a) Prior deferred interest:  $0.00
  (b) Prior deferred principal: $0.00

Deferred Items: The portion of the outstanding principal balance, corporate advances and/or unpaid interest that is referenced above has been deferred. The deferred amount will not accrue interest. The deferred amount will remain due and owing but is not required to be paid until the loan is paid in full or if not sooner paid, on the Maturity Date or Modified Maturity Date. The deferred amount is not a forgiveness of partial debt and will not be reported as such.

D.    I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E.    If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

F.    I agree to pay in full the Deferred Principal Balance and any other amounts still owed under the Loan Documents by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the new Maturity Date.

G.    If I make a partial prepayment of Principal, the Lender may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

H.    If on June 1, 2047, ('Balloon' or 'Modified Balloon Date'), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, the Borrower will pay these amounts in full on the Balloon Date.

4.    **Additional Agreements.** I agree to the following:

A.  ·  That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property

need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B.     That this Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Lender.

C.     To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D.     Funds for Escrow Items. I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items.

Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount.   Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the

Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

E.  That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F.  That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G.  That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H.  That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product (s), and/ or subordination agreement (s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/ or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement (s), title insurance product (s) and/ or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification program.

L. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, for mailing address, where applicable, 1901 E. Voorhees Street, Suite C, Danville, IL 61834, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of this trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury; (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

N. That if any document related to the Loan Documents and/ or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby

indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O.  That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

THIS COMMUNICATION IS FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

BANKRUPTCY NOTICE - IF YOU ARE A CUSTOMER IN BANKRUPTCY OR A CUSTOMER WHO HAS RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT: PLEASE BE ADVISED THAT THIS NOTICE IS TO ADVISE YOU OF THE STATUS OF YOUR MORTGAGE LOAN. THIS NOTICE CONSTITUTES NEITHER A DEMAND FOR PAYMENT NOR A NOTICE OF PERSONAL LIABILITY TO ANY RECIPIENT HEREOF, WHO MIGHT HAVE RECEIVED A DISCHARGE OF SUCH DEBT IN ACCORDANCE WITH APPLICABLE BANKRUPTCY LAWS OR WHO MIGHT BE SUBJECT TO THE AUTOMATIC STAY OF SECTION 362 OF THE UNITED STATES BANKRUPTCY CODE. HOWEVER, IT MAY BE A NOTICE OF POSSIBLE ENFORCEMENT OF THE LIEN AGAINST THE COLLATERAL PROPERTY, WHICH HAS NOT BEEN DISCHARGED IN YOUR BANKRUPTCY. IF YOU HAVE QUESTIONS PLEASE CONTACT OUR LOAN RESOLUTION DEPARTMENT AT 1-800-306-6059.

In Witness Whereof, the Lender and I have executed this Agreement.

Specialized Loan Servicing LLC
As Servicer

By: _____ (Seal)
Name:  Susan Miller
Its:  Vice President
Date: _____1/21/14_____

_____ (Seal) Date: __1-15-14__
JIMMIE R ROBINSON


JOSEPH R. SORACCO
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires April 24, 2016


If the borrower is an inter vivos revocable trust, we require each of the trustees to sign this document in the signature blocks below.

_____, Trustee if the _____ Trust instrument dated

_____, for the benefit of _____ (Borrower)

_____, *Trustee if the* _____._____ *Trust instrument dated*

_____, *for the benefit of* _____ *(Borrower)*

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT -Single Family 00MU
- Fannie Mac/Freddie Mac UNIFORM INSTRUMENT
Form 3157  3/09 (rev. 10/10) SigniaDocs, Inc. 2010

Date:   January 3, 2014

| **Summary** | Here's a summary of your modified mortgage. |
|---|---|

**NEW PRINCIPAL BALANCE.** Any past due amounts as of the end of the trial period, including unpaid interest, real estate taxes, insurance premiums, and certain assessments paid on your behalf to a third party, will be added to your mortgage loan balance. In addition, your mortgage insurance premium may increase as a result of the higher mortgage loan balance. **If you fulfill the terms of the trial period including, but not limited to, making any remaining trial period payments, we will waive ALL late charges that have accrued and remain unpaid at the end of the trial period.**

**INTEREST RATE.** The interest rate on your modified loan will be adjusted as noted in the attached Modification Agreement in Section 3.C.

**TERM EXTENSION.** To reduce your mortgage payment, we will extend the term of your mortgage. This means we will spread your payments over a longer period.

**DEFERRAL OF PRINCIPAL.** To further reduce your mortgage payment, we will defer collection of and not collect interest on $40,590.88 of your outstanding principal. You will not be required to make monthly payments on that portion. This portion of principal will be due when you pay off the modified loan, which will be when you sell or transfer an interest in your house, refinance the loan, or when the last scheduled payment is due.

**PRINCIPAL FORGIVENESS.** To further reduce your mortgage payment, we will forgive a portion of your outstanding principal equal to $0.00. You will never be required to repay this amount. However, there could be income tax consequences related to this forgiveness, and you should consult a tax advisor.

**ESCROW ACCOUNT.** The terms of your Modification Agreement require the servicer to set aside a portion of your new monthly payment in an escrow account for payment of your property taxes, insurance premiums and other required fees. Any prior waiver of escrows by your lender is no longer in effect. The initial estimated amount is calculated based upon the tax and insurance information obtained while in the modification process, and may change. An escrow analysis statement referencing the actual payment and effective date will be mailed to you within four weeks of the modification being completed. Specialized Loan Servicing LLC (SLS) will draw on this account to pay your real estate taxes and insurance premiums as they come due. Please note that your escrow payment amount will adjust if your taxes, insurance premiums and/or assessment amounts change, so the amount of your monthly payment that Specialized Loan Servicing LLC (SLS) must place in escrow will also adjust as permitted by law. This means that your monthly payment may change. Your initial monthly escrow payment is estimated to be $224.77. This amount is included in the loan payment noted in Section 3.C. of the enclosed Modification Agreement; you do not need to remit this amount separately.

**ESCROW SHORTAGE.** Due to the timing of your tax and insurance payments, we have determined that there is a shortage of funds in your escrow account in the amount of $1,393.36. You may pay this amount over a 5-year (60 months) period. **If you wish to pay the total shortage now in a lump sum, please contact us. Paying this amount now in a lump sum will reduce your new monthly mortgage payment.**

**PAYMENT SCHEDULE.** The enclosed Modification Agreement includes a payment schedule in Section 3.C. showing your payment plan for the life of your modified loan after the trial period.

**FEES.** There are no fees or other charges for this modification .

**REPRESENTATIONS.** Please read the enclosed Modification Agreement carefully and make sure that you understand it and that the statements set forth in the "My Representations" section are true and accurate. If you have any questions, please contact us at 1-800-306-6059 or Email .

Please be advised that if the Agreement is altered in any way that the modification agreement will be rejected and the offer to modify your mortgage loan will be voided. All terms of the original Note and Deed of Trust will be immediately effective, including any default status of the loan.

If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt, please be advised this letter constitutes neither a demand for payment of the captioned debt nor a notice of personal liability to any recipient hereof who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code. However, it may be a notice of possible enforcement of the lien against the collateral property, which has not been discharged in your bankruptcy. If you have questions, please contact our Customer Care Center at 1-800-306-6057.